**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RYAN OMAR WHEATON,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:05-CV-764-A** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,[1]** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Ryan Omar Wheaton, TDCJ #1096309, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Tennessee Colony, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal

---

[1] Effective June 1, 2006, Douglas Dretke was replaced by Nathaniel Quarterman as Director of the Texas Department of Justice, Correctional Institutions Division. Accordingly, Nathaniel Quarterman should be automatically substituted as Respondent. *See* FED. R. CIV. P. 25(d)(1). The clerk of Court is directed to docket and change the designation of the Respondent.

Justice, Correctional Institutions Division.

C. FACTUAL AND PROCEDURAL HISTORY

In August 2001 Wheaton was charged by indictment with robbery by threats in cause number 0804727D in the Criminal District Court Number Four of Tarrant County, Texas. (Clerk's R. at 3.) The indictment also included an enhancement notice alleging a prior felony conviction for felony theft. (*Id.*) Following his trial in January 2002, a jury found Wheaton guilty of the charged offense. (*Id.* at 96.) Thereafter, Wheaton entered a plea of true to the enhancement allegation, and the jury assessed his punishment at thirty-one years' confinement. (*Id.*) Wheaton appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment on July 3, 2003. *Wheaton v. Texas*, No. 2-02-033-CR, slip op. (Tex. App.–Fort Worth July 3, 2003) (not designated for publication). On October 15, 2003, the Texas Court of Criminal Appeals refused Wheaton's petition for discretionary review. *Wheaton v. Texas*, PDR No. 1482-03. Wheaton did not seek writ of certiorari. (Petition at 3.) On November 22, 2004, Wheaton filed a state application for writ of habeas corpus raising one or more of the claims presented herein, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court on October 26, 2005. *Ex parte Wheaton*, Application No. 61,967-01, at cover. Wheaton filed this petition on November 22, 2005. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (holding pro se habeas petition filed when papers delivered to prison authorities for mailing).

The evidence elicited at trial was that on the morning of April 9, 2001, Wheaton entered the Texas Bank on south Hulen Street in Fort Worth undisguised, approached Ellen Briggs, the lead teller, at a window and asked if she could help him. (4Reporter's R. at 27.) He opened a notebook and showed Briggs a note that read "I have a gun." (*Id.* at 28.) Briggs did not see a gun but believed

2

Wheaton had a gun.  (*Id.* at 32-33, 71.)  Briggs told Wheaton that she was not at her station and that there was no money in the drawer.  (*Id.* at 31-32.) Wheaton nodded toward Rachel Elizondo, another teller, and told Briggs to go take the money out of her hand.  (*Id.* at 32.)  Briggs was scared and confused and repeated to Wheaton, "What did you say.  I can't hear you.  I can't understand what you're saying to me."  (*Id.* at 33, 75, 84-86.)  Wheaton mouthed a word and then turned and walked out of the bank without any money.  (*Id.*)  Wheaton and his actions were caught on videotape by the bank's surveillance cameras.  (*Id.* at 48-54; 6Reporter's R., State's Exhibits 10 & 11.)  Briggs and Leah Boone, another bank employee, also picked Wheaton out of photo lineups and identified Wheaton at trial as the robber.  (*Id.* at 55-59, 102-05.)  Wheaton, who testified on his own behalf, did not dispute the testimony of Briggs and Boone and, instead, agreed that he was the person who entered the bank on that day, placed a binder on the teller window, opened it up and presented some sort of note to Briggs.  (*Id.* at 137-54)  He stated, however, that he did not remember committing the offense because he was living on the streets and had been up doing drugs for days.  (*Id.*)  He stated that he was not on medication for his mental illness or in his right state of mind, and only after leaving the bank knew he had done something wrong.  (*Id.*)  Wheaton admitted to six prior state felony convictions for theft and a prior federal conviction for conspiring to transport stolen automobiles across state lines.  (*Id.* at 134-37.)

D.  Issues

In his first and third grounds, Wheaton raises various ineffective assistance claims.  In his second ground, he raises various claims of prosecutorial misconduct.  In his fourth ground, he claims there was a fatal variance between the charging instrument and the proof at trial.  (Petition at 7-8 & Pet'r Memorandum in Support at 6, 16.)

E.  RULE 5 STATEMENT

Wheaton has sufficiently exhausted available state remedies with regard to his claims as required by 28 U.S.C. § 2254(b)(1)(A).

F.  DISCUSSION

1.  Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case.  *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings.  *Hill*, 210 F.3d at 485.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  28 U.S.C. § 2254(e)(1).  The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

§ 2254(e)(1).   Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as here, it is an adjudication on the merits, which is entitled to this presumption.  *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).  In such a situation, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied.  *See Townsend v. Sain*, 372 U.S. 293, 314 (1963);[2] *Schartzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002).

### 2.   Ineffective Assistance of Counsel

In his first and third grounds, Wheaton contends he received ineffective assistance of trial and appellate counsel.  Wheaton contends trial counsel was ineffective before and during trial by failing to (1) investigate the facts of his case, (2) object to the prosecutor injecting his personal opinion, (3) raise the defense of temporary insanity, (4) move the trial court to appoint an expert witness psychologist, (5) fully investigate and discover his mental history, and (6) properly present his medical records at trial.  (Petition at 7.)  He contends appellate counsel was ineffective by failing to raise on direct appeal issues concerning (1) ineffective assistance of counsel, (2) prosecutorial misconduct, (3) sufficiency of the evidence, (4) a defective indictment, and (5) a defective jury charge.  (*Id.*)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right.  U.S. Const. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95

---

[2] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

(1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the petitioner demonstrates that the state courts' application of *Strickland* was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

Wheaton was represented at trial by Joetta Keene and Terri Moore and on appeal by J.R. Molina. After holding a hearing by affidavit, the state trial court entered findings of fact refuting Wheaton's allegations of ineffective assistance. (State Habeas R. at 167-85.) The court's findings were largely based on trial and appellate counsel's detailed affidavits concerning their representation of Wheaton in the trial and appellate proceedings. (*Id.* at 74-153.) Based on its findings, the trial court determined that Wheaton had failed to prove ineffective assistance of counsel. In turn, the

Texas Court of Criminal Appeals also rejected Wheaton's ineffective assistance claims based upon the trial court's findings. *Ex parte Wheaton*, No. 61,967-01, at cover.

This court must afford the state court's factual findings the presumption of correctness unless rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). Wheaton has failed to meet this burden. He does not specifically refer to the state court's findings or offer new evidence in rebuttal. Thus, assuming the state court's factual findings to be correct, and having independently reviewed the state court records, the state courts' adjudication of Wheaton's ineffective assistance claims was neither erroneous nor objectively unreasonable. Moreover, even if Wheaton could demonstrate deficient performance, his arguments fall short of satisfying the prejudice element of *Strickland*. The evidence of Wheaton's guilt was overwhelming and, given his criminal history, it is unlikely that the result of his trial would have been different but for trial counsel's alleged omissions. *See Thomas v. Lynaugh*, 812 F.2d 225, 230 n.7 (5th Cir. 1987). Nor has Wheaton identified any meritorious issues that were not raised on appeal.[3] Prejudice does not result from appellate counsel's

---

[3]Among other things, Wheaton contends appellate counsel should have challenged the sufficiency of the evidence because he had no gun and because he left the bank without any money. The state, however, did not allege use of a deadly weapon in the indictment. Moreover, under Texas law, a person commits robbery by threats if, in the course of committing theft and with intent to obtain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* TEX. PENAL CODE ANN. § 29.02 (Vernon 2003). A person need not actually have committed theft to be guilty of robbery. *See Jones v. State*, 687 S.W.2d 430, 432 (Tex. App.–Houston [14th Dist.] 1985, no pet.). In other words, the actual commission of the offense of theft is not a prerequisite to the commission of the offense of robbery. *See Watts v. Texas*, 516 S.W.2d 414, 415 (Tex. Crim. App. 1974). The phrase "in the course of committing theft" within the robbery statute, means conduct which occurs in an attempt to commit, during commission, or in immediate flight after the attempt or commission of theft. *See* TEX. PENAL CODE ANN. § 29.01(1); *Finley v. Texas*, 917 S.W.2d 122, 125 (Tex. App–Austin 1996, pet. ref'd). Thus, the state was not required to conclusively show by independent evidence that a completed theft actually

(continued...)

failure to assert a meritless claim or a meritless argument.  *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

### 3.  Prosecutorial Misconduct

In his second ground, Wheaton claims the prosecutor engaged in prosecutorial misconduct by (1) injecting inflammatory statements before the jury, (2) coercing Briggs to insinuate before the jury that future rehabilitation was not going to happen, and (3) likening his robbery to that of "Bonnie and Clyde" robberies.  (Petition at 7.)

When presented with these claims, the state courts concluded that Wheaton's first claim was procedurally defaulted because it had not been raised on direct appeal.  (State Habeas R. at 176.)  Federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial on a state procedural default.  *See Harris v. Reed*, 489 U.S. 255, 265 (1989).  This procedural default in state court is an adequate state procedural ground barring federal habeas review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-07 (1991).  Absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, the claim is procedurally barred from this court's review.

As to Wheaton's second and third claims, the state courts determined (1) that Wheaton had failed to prove the state coerced Briggs and (2) that the prosecutor's reference during voir dire to a Bonnie-and-Clyde situation was proper to explain the application of relevant law.  (*Id.*)  The state

---

[3](...continued)

occurred in order to establish Wheaton's guilt.  It was required only to adduce evidence which tended to show that Wheaton intended to threaten or place Briggs in fear of imminent bodily injury or death.  A reasonable juror could infer from Wheaton's actions and the surrounding circumstances that he entered the bank on the day in question with the intent to rob the bank of money.  *See LaPoint v. Texas*, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986).  The fact that he had no gun and left the bank without any money does not render the evidence insufficient.

courts' determinations are entitled to deferential treatment.  Wheaton fails to direct the court to any evidence or the specific location in the record indicating that Briggs was coerced in any way to testify that Wheaton could not be rehabilitated, and, having reviewed the testimony of Briggs, no factual basis for the claim is found.  Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value.  *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

Further, in the context of a habeas proceeding, alleged claims of prosecutorial misconduct during a state trial are reviewed to determine whether it so infected the trial with unfairness as to make the resulting conviction a denial of due process.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Ortega v. McCotter*, 808 F.2d 406, 407 (5th Cir. 1987).  To warrant habeas relief, improper conduct by a state prosecutor must be so prejudicial that it rendered the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment.  *See e.g., Greer v. Miller*, 483 U.S. 756, 765 (1987); *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986); *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).  A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted.  *Barrientes*, 221 F.3d at 753 (quoting *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992)).  A prosecutor's improper conduct will, in  itself, exceed constitutional limitations in only the most egregious cases.  *Ortega v. McCotter*, 808 F.2d 406, 410-11 (5th Cir. 1987).  The state courts determined that the prosecutor's reference to a Bonnie-and-Clyde was proper as a hypothetical fact situation to explain the law.  (*Id.* at 173, 176.)  Wheaton has not shown that the state courts' decision is contrary to or an unreasonable application of clearly established federal on the issue.  Moreover, any alleged misconduct of was harmless in light of the

overwhelming evidence of Wheaton's guilt.  *See United States v. Hasting*, 461 U.S. 499, 511-12 (1983).

### 4. Fatal Variance

Under his fourth ground, Wheaton claims there was a fatal variance between the indictment and the proof offered at trial. First, Wheaton alleges the prosecutor incorrectly stated that the jury should find him guilty of robbing Briggs or Elizondo. (Petition at 8.) Wheaton claims there was no proof that he exhibited a gun or proof of any overt act that would have placed Briggs in fear of imminent bodily injury or death. (Pet'r Memorandum Brief at 11.) To the extent Wheaton attempts to raise a sufficiency-of-the-evidence claim, the state courts determined that he had waived a sufficiency-of-the-evidence claim by failing to raise the issue on appeal. (State Habeas R. at 178.) This procedural default in state court is an adequate state procedural ground barring federal habeas review. *See Ylst*, 501 U.S. at 801-07. Absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, the claim is procedurally barred from this court's review.

To the extent Wheaton attempts to raise a claim that there was a fatal variance between the indictment, which contains only an allegation of robbery of Briggs, and the jury charge, which contains allegations of both robbery of Briggs and the lesser included offense of attempted theft from Elizondo, the claim is meritless. The lesser included offense charge was given to the jury at the request of the defense. Even if there was error, any such variance did not affect Wheaton's substantial rights. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

## II. RECOMMENDATION

Wheaton's petition for writ of habeas corpus and motion for evidentiary hearing should be denied.

### III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until October 25, 2006.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

### IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until October 25, 2006, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to

the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby

is returned to the docket of the United States District Judge.

SIGNED October 4, 2006.


     /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE